**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AARON LEE SALISBURY, | ) | CASE NO. 5:23-CV-01797-DAP |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I. Introduction

Plaintiff, Aaron Lee Salisbury ("Salisbury" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On July 6, 2021, Claimant filed an application for DIB, alleging a disability onset date of May 3, 2021. (ECF No. 7, PageID #: 1634). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On August 18, 2022, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). On September 23, 2022, the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 1634-45). The ALJ's decision

became final on July 27, 2023, when the Appeals Council declined further review.  (*Id.* at PageID #: 1618).

On September 15, 2023, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 6, 9, 10). Claimant asserts the following assignments of error:

1. The ALJ's determination is unsupported by substantial evidence as he failed to properly evaluate the opinion of treating medical source Manzoor Elahi, M.D.

2. The ALJ failed to properly consider Mr. Salisbury's subjective testimony.

(ECF No. 6 at 3).

## III. Background

### A.  Relevant Allegations & Hearing Testimony

The ALJ summarized Claimant's allegations and his relevant hearing testimony:

The claimant alleges being unable to work primarily due to his difficulties with short term memory. He testified to forgetting conversations and having to use notes and reminders to function throughout the day. In March 2022, his father was granted guardian of the person and estate over the claimant (11D).

The claimant has lived with his parents since the alleged onset date. He is able to manage his own personal care, grocery shop, drive, and provide some care for his children, such as picking them up from school, albeit using written reminders/notes. He attends his children's extracurricular activities, but reports that he is unable to remember the event.

(ECF No. 7, PageID #: 1639). With respect to ongoing memory issues, the ALJ noted that Claimant gave "the example of needing to make notations of where he parked when going to the grocery store so he can find his car later." (*Id.* at PageID #: 1641). Additionally, Claimant "reported that he has significant issues with sleep" and "[a]lthough he has experienced recent improvement, he testified that he would go two days without sleep, then sleep for most of a day." (*Id.*).

**B. Relevant Medical Evidence**

The ALJ also summarized Claimant's health records and symptoms:

At the time of the alleged onset date, the claimant presented to for evaluation with confusion, apathy and headache (4F:145, 157). It was determined that he suffered toxic encephalopathy from substances with cocaine found in his system upon testing and recent alcohol use (4F:14, 152, 173). He had been clean from substance abuse for about 19 years but recently relapsed. This resulted in damage to the bilateral hippocampi and other regions of the brain. Mental status examinations during his hospitalization noted some impaired recall of recent events such as not remembering that he had recently interviewed for jobs and incorrectly stating his children's ages (4F:140). He was said to have moderately impaired memory, limited attention/concentration, restricted range affect, and limited judgement (*Id.*). He was discharged to his parents' care. However, the following week he was taken back to the hospital after becoming very agitated and running to the woods in order to go to his own home (4F:14). The claimant was hospitalized for another week and diagnosed with Korsakoff's psychosis and agitation, and was again discharged to his parents' care (4F:20-21). His social worker noted that his safety was a factor as his short term memory is negligible (4F:20).

Thereafter the claimant began treating with a psychiatrist. In his May 2021 initial visit, he asked questions repeatedly and was noted to have antegrade and retrograde memory loss (2F:77). He also endorsed sadness, loss of interest, low energy, withdrawing from friends, stress, and anxiety. The mental status examination at that time noted a depressed and irritable mood, constricted affect, and impaired memory (2F:80-81). He was prescribed medication and began attending regular follow up visits every two weeks on average (*see* 2F:1-5). His medications were modified over time due to ongoing symptoms of depression and anxiety. The claimant reported being depressed and anxious, having mood swings and irritability, and feels like he is having panic attacks. The mental status examination at an August 2021 visit noted, consistent with most other early visits, a withdrawn demeanor, depressed, anxious and irritable mood with full affect, and a memory impairment (2F:2-3). The claimant also had undergone cognitive testing in June 2021 and scored a 20/30 on the Montreal Cognitive Assessment (MoCA) (1F:1).

Despite the significant issues and objective findings after the initial injury, the claimant's condition quickly began to improve. A follow up MRI of the brain in July 2021 revealed resolution of restricted diffusion and parenchymal edema, and findings consistent with the healing process from the prior insult (4F:6-7). Cognitive testing during a neuropsychological evaluation in August 2021 found impairments in memory storage/consolidation in the context of otherwise intact neuropsychological function, which findings were said to be suggestive of dysfunction of mesial temporal lobe structures, likely secondary to his recent toxic exposure. The examiner also said that the claimant's ongoing depression is likely to exacerbate his existing cognitive difficulties (1F:4).

3

By September 2021 the claimant's neurologist noted that his memory and insight were "a lot better" but also noted that his memory was still "significantly off" (3F:4-5 and 9F:8; *see also* 1F:1). At that time the claimant's mother suggested a return to work date of January 2022, which the treating neurologist noted was "a very reasonable estimate" (3F:5).

At his neurology follow up in January 2022, the claimant stated that he was generally feeling 'ok' other than memory loss (9F:1). His neurologist noted good insight and observed that the claimant seemed mentally sharp (9F:4). He did also, however, note a flat affect. A repeat MRI dated December 2021 showed continuous resolution of the metabolic/toxic parenchymal process (4F:3).

The claimant has treated with speech therapy throughout the relevant period for cognitive linguistic rehabilitation as well, beginning in June 2021 (*see* 7F:1, 3). In June 2022 his goals for treatment including utilizing a daily log/calendar and to improve his short-term, prospective and working memory. He was said to have made progress regarding short term and prospective memory functioning and to have met his goal regarding working memory (7F:15). Furthermore, in repeat MoCA testing in June 2022, the claimant scored 30/30, showing notable improvement (10F:11). This included 6/6 in attention and 5/5 in delayed recall (*Id.*). However, his neurologist also noted that his recall was "without much substance" and that he still had to write things down to remember, such as appointments or any tasks for the day (10F:12). The claimant testified that his mother prepares a list for him of things happening each day. Improvements in the claimant's memory have continued to be documented in the most recent visits dated July 2022 (*see* 7F:16).

(ECF No. 7, PageID #: 1640-41).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. The claimant has the following severe impairments: toxic encephalopathy; anxiety disorder; major depressive disorder; alcohol and cocaine abuse disorders (20 CFR 404.1520(c)).

. . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with certain non-exertional limitations. Specifically, the claimant can never climb ladders, ropes or scaffolds and must avoid all exposure to workplace hazards; he can understand and remember simple instructions (one to four step); he can attend to and carry out routine, repetitive tasks; he can adapt to changes that are explained or demonstrated in advance and gradually introduced.

. . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 3, 2021, through the date of this decision (20 CFR 404.1520(g)).

(ECF No. 7, PageID #: 1636, 1639, 1643-44).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

## C.  Discussion

Claimant raises two issues on appeal, arguing that the ALJ failed to properly consider (1) the medical opinion evidence and (2) Claimant's subjective testimony. (ECF No. 6 at 3).

### 1.  The ALJ properly considered the medical opinions.

Claimant first argues that the ALJ's determination of the RFC "is unsupported by substantial evidence as he failed to properly evaluate the opinion of Dr. Elahi in accordance with the regulations and caselaw." (ECF No. 6 at 13).

For claims filed after March 27, 2017, the regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* Medical source opinions are evaluated using the factors listed in § 404.1520c(c). The factors include supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." *Id.* at § 404.1520c(c). The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. *Id.* at § 404.1520c(b)(2). Under the regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c).

Here, the ALJ provided the following discussion of Dr. Elahi's opinion:

Manzoor Elahi MD, the claimant's treating psychiatrist, submitted an assessment of the claimant's mental functioning in July 2022 (8F). Of 25 listed mental tasks, Dr. Elahi opined that the claimant would either have no useful ability to function or be unable to meet competitive standards in nine such tasks. While Dr. Elahi opined that the claimant would be unable to meet competitive standards regarding understanding and remember very short and simple instructions, he also opined that the claimant could carry out such instructions. He further stated that the claimant would not be able to maintain regular attendance or complete a normal workweek without interruptions from his symptoms, but that he could perform at a consistent pace. The undersigned finds Dr. Elahi's opinion only somewhat persuasive. While the opinion does address the claimant's memory issues, it has unexplained inconsistencies as to why some tasks he has little limitation but others he has "no useful ability to function." The record, including Dr. Elahi's treatment notes, show that the claimant continues to have issues with his memory despite significant

> improvement since the alleged onset date. However, the notes also suggest a much
> greater ability to function than suggested by Dr. Elahi's assessment.

(ECF No. 7, PageID #: 1642)

Claimant argues that the ALJ's "supportability assessment is inadequate" because the "ALJ mentions Dr. Elahi's examination findings, even acknowledges that they show Mr. Salisbury continued to have issues with memory, but does not explain how they detract from the opinion." (ECF No. 6 at 14). Claimant also asserts that "the ALJ's evaluation completely lacks a consistency analysis." (*Id.* at 15).

The Commissioner responds that "[t]he ALJ properly explained why he found Dr. Elahi's opinion 'somewhat persuasive,' and therefore the Court should affirm her decision." (ECF No. 9 at 6). As to supportability, the Commissioner asserts that "the ALJ considered both the lack of supporting rationale within the opinion and the lack of support in Dr. Elahi's progress notes." (*Id.*). The Commissioner asserts "[t]he ALJ also found Dr. Elahi's opinion inconsistent with other records showing improved cognition and decreased symptoms." (*Id.* at 7).

Claimant replies that the ALJ's discussion of Dr. Elahi's opinion does "not provide the minimal level of articulation under the new regulations." (ECF No. 10 at 2).

The ALJ's discussion of Dr. Elahi's opinion illustrates that he considered the supportability and consistency factors. As to supportability, which addresses the supporting medical evidence and explanations for the opinion, the ALJ noted that there were "unexplained inconsistencies as to why some tasks he has little limitation but others he has 'no useful ability to function'" and pointed out examples of those inconsistencies. (ECF No. 7, PageID #: 1642). Thus, the ALJ found that the opinion was not supported based on the lack of explanation or citation to the evidence. Concerning consistency, the ALJ specifically noted that while "[t]he record, including Dr. Elahi's treatment notes, show that the claimant continues to have issues with his memory despite significant

8

improvement since the alleged onset date[,] . . . the notes also suggest a much greater ability to function than suggested by Dr. Elahi's assessment." (*Id.*). In summarizing the medical records, the ALJ highlighted reports of "progress regarding short term and prospective memory functioning;" increased scores in cognitive testing from June 2021 to June 2022; and improvement in memory. (*Id.*; *see id.* at PageID #: 1898, 2455, 2459, 2497-98). This makes clear that the ALJ found Dr. Elahi's opinion inconsistent with the other medical records.

Because the ALJ addressed both supportability and consistency, he complied with the regulations in finding Dr. Elahi's opinion only somewhat persuasive and substantial evidence supports that conclusion. The Court must defer to the ALJ's decision, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

After discussing Dr. Elahi's opinion, Claimant briefly argues that the ALJ's reliance on the State agency's reconsideration opinion is misplaced because "there is significant evidence after the [State agency] conducted their review in March 2022" and "[t]he ALJ's assertion that Mr. Salisbury has 'improved' is insertion of his lay opinion contrary to the medical evidence." (ECF No. 6 at 16-17). The Commissioner argues that Claimant is essentially asking the Court to impermissibly reweigh the evidence. (ECF No. 9 at 8). In reply, Claimant argues that it was improper for the ALJ to rely on the State agency opinion because the ALJ was unqualified to consider subsequent evidence after the opinion was authored. (ECF No. 10 at 3-4).

The ALJ explained his consideration of the State agency opinions:

The undersigned also considered the opinions of the State Agency medical file consultants who reviewed the claim. Upon review at the Initial level, the consultants opined that the claimant would be limited to a medium level of exertion, would need to avoid all hazards, and could perform simple one to two step tasks that are well-explained and introduced slowly (1A). Upon review at the Reconsideration level, however, the consultants found no exertional limits but

> restricted the claimant from all hazards and opined that he could perform simple one to four step tasks that are well-explained and slowly introduced (4A). The undersigned finds the opinion upon Reconsideration persuasive as it accounts for the claimant's improvements over a short period of time but also addresses his ongoing memory issues. The opinions made at that the Initial level are not persuasive as more recent medical records support less restrictive limitations.

(ECF No. 7, PageID #: 1642).

The Court agrees with the Commissioner that the Claimant's argument is essentially a request to reweigh the evidence. In making his argument, Claimant relies on *Mason v. Commissioner of Social Security*, No. 5:23-cv-331, 2023 WL 7386420, at *10 (N.D. Ohio Nov. 8, 2023), where the ALJ rejected the State agency opinions based on uncited medical evidence from after the State agency review without explaining how the additional evidence contradicted the State agency opinion. Here, however, the ALJ found the State agency's reconsideration opinion more persuasive than the initial level opinion based on "claimant's improvements over a short period of time," which the ALJ detailed in the discussion of the medical evidence. (*Id.*; *see id.* at PageID #: 1898, 2455, 2459, 2497-98). Thus, unlike *Mason* where the ALJ wholly failed to cite the evidence that supported rejecting the opinion, the ALJ here simply found one opinion more persuasive than the other because the later opinion was consistent with Claimant's documented improvement. Substantial evidence supports this decision. While Claimant points to evidence to support that he had not improved, it is not for the Court to "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)).

Overall, the ALJ complied with the regulations in considering the medical opinions and substantial evidence supports the ALJ's decision.

**2.  The ALJ did not err in considering Claimant's subjective complaints.**

Claimant argues that the ALJ did not properly consider his subjective testimony because after making a "boilerplate" statement that the testimony was "not entirely consistent with the medical evidence and other evidence in the record," the ALJ "summarized evidence but did not provide any specific reasons to reject Mr. Salisbury's subjective testimony." (ECF No. 6 at 18-19). The Commissioner responds that Claimant "disregards the ALJ's comparison of his hearing testimony with the medical evidence when he argues the ALJ included only a boilerplate discussion of his symptoms" and asserts that the "ALJ acknowledged Plaintiff's testimony throughout the RFC rationale, and pointed to both objective findings and increased activity levels to support his symptom evaluation." (ECF No. 9 at 8). Claimant replies that "[t]he conclusion that [his] condition was completely resolved is simply not supported by the record." (ECF No. 10 at 5).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the

11

individual's functional limitations and restrictions.  2017 WL 5180304 at *7-8. The ALJ need not

analyze all seven factors but should show that she considered the relevant evidence. *See Cross v.*

*Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). SSR 16-3p states:

> [I]f an individual's statements about the intensity, persistence, and
> limiting effects of symptoms are inconsistent with the objective
> medical evidence and the other evidence, we will determine that the
> individual's symptoms are less likely to reduce his or her capacities
> to perform work-related activities or abilities to function
> independently, appropriately, and effectively in an age-appropriate
> manner.

The ALJ's "decision must contain specific reasons for the weight given to the individual's

symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess

how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see*

*also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's

testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court

gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will

not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of*

*Soc. Sec*., No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*,

486 F.3d at 248–49), *report and recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug.

8, 2019).

Here, after summarizing the medical evidence, the ALJ provided the following discussion

concerning Claimant's complaints:

> The undersigned notes that the claimant testified to ongoing memory issues, giving
> the example of needing to make notations of where he parked when going to the
> grocery store so he can find his car later. This is also documented in the record in
> June 2022 when the claimant requested a handicap placard in order that he would
> be able to park where he can see his car upon exiting the store (*see* 10F:3). His
> neurologist noted in May 2022 that the guardianship was still needed due to the
> claimant's inability to recall sort [sic] conversations or details of recent events
> (10F:12). However, based on the examination notes and the claimant's perfect score

with cognitive testing, this is not seem fully supportable.

As noted above, the claimant has continued treatment with psychiatry throughout the relevant period as well (*see* 6F). Recent notes, consistent with the remainder of the record, document that he is remembering things better but still lacking detailed memory (6F:1, 5). Regarding his other mental health symptoms, the claimant continued to endorse anxiety with difficulty concentrating, irritability, and motor restlessness, as well as depression with anhedonia, excessive worrying, and feelings of hopelessness and worthlessness. He also discussed his feelings of frustration. The mental status examination documented that he appeared anxious but had a normal mood with constricted affect (6F:2). However, throughout the relevant period, the psychiatry notes also show progressive improvement regarding concentration, motor restlessness, and feelings of hopelessness and worthlessness (*see* 6F).

At the hearing the claimant also reported that he has significant issues with sleep. Although he has experienced recent improvement, he testified that he would go two days without sleep, then sleep for most of a day. This cycle repeated regularly in the past, but now it occurs less frequently. While sleep issues are consistently noted in the record, there are many notations of improvement. The following month, the claimant reported that his sleep was "terrible" and that he was only sleeping every other night. His Seroquel dose was increased to 400mg to better address his sleep difficulties.

Overall, the record documents that the claimant has been managing with limitations since his alleged onset date. While he was initially quite limited, he fortunately showed quick improvement. The improvement is documented in subsequent MRI scans as well as a follow up MoCA testing. Presently the claimant continues to have some difficulty with his memory but he has learned to manage with the use of lists and reminders, and uses a GPS for navigation while driving.

(ECF No. 7, PageID #: 1641-42).

This discussion illustrates that the ALJ properly considered the relevant factors under SSR 16-3p. The ALJ referenced examination notes—which, as detailed earlier in the ALJ's decision, showed overall improvement—and a "perfect score with cognitive testing," showing that the ALJ found the medical records did not fully support Claimant's allegations. (*Id.*). The ALJ noted that Claimant's medication was increased to address his sleep difficulties and the problems were occurring less frequently. (*Id.*). Additionally, the ALJ considered Claimant's daily activities, including taking care of himself, providing some care for his children, grocery shopping, and

13

driving, specifically recognizing that Claimant is able to manage his memory difficulties "with the use of lists and reminders." (*Id.*). Further, the ALJ accounted for Claimant's memory difficulties by "limiting the claimant to simple, repetitive tasks in an essentially static work environment in which changes are explained to him in advance and gradually introduced." (*Id.* at PageID #: 1642-43). Thus, substantial evidence supports the ALJ's treatment of Claimant's symptom testimony. Because it is not for the Court to reweigh evidence when reviewing an ALJ's decision, no compelling reason exists for the Court to disturb the ALJ's credibility finding. *Cross*, 373 F. Supp. 2d at 732.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

 Dated: April 24, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).